**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

KEMOA JONES,

      Plaintiff,

      v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

      Defendant.

CIVIL ACTION NO.: 5:20-cv-44

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge John R. Mason ("the ALJ"), denying her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Plaintiff urges the Court to reverse and remand the ALJ's decision for rehearing.  Doc. 17 at 26.  For the reasons which follow, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g) and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff applied for both SSI and DIB on December 8, 2016.  R. 230–42.  Both of Plaintiff's claims were denied initially.  R. 115–24.  Only Plaintiff's SSI claim was denied upon reconsideration because Plaintiff only submitted the SSI reconsideration form.  R. 125–27, 134–36.  Plaintiff's alleged onset date is November 22, 2016.  R. 253–54 (noting amended onset date).  After a hearing, the ALJ issued an unfavorable decision on March 19, 2019.  R. 8–19.  The Appeals Council denied Plaintiff's request for review.  R. 1–7.

Plaintiff was 40 years old at the time of the ALJ's decision.  R. 8, 56, 237.  Plaintiff

completed the 10th grade and started the 11th grade and has past relevant work as a nurse

assistant, kitchen helper, van driver, packager, sandwich maker, and cleaner.  R. 57–63, 69–70,

71–72, 277, 330–38.  During the administrative proceedings, Plaintiff alleged impairments

primarily relating to issues with her knees, feet, and ankles.

## DISCUSSION

**I.      The ALJ's Findings**

Title II of the Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition

of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or
> mental impairment or impairments are of such severity that [she] is not only
> unable to do [her] previous work but cannot, considering [her] age, education, and
> work experience, engage in any other kind of substantial gainful work which
> exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds

2

to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and is acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In this case, the ALJ followed this sequential process and determined Plaintiff did not engage in substantial gainful activity since November 22, 2016.  R. 13–14.  At step two, the ALJ determined Plaintiff had the following combination of severe impairments: bilateral degenerative joint disease of bilateral knees and obesity.  R. 14.  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in the regulations.  R. 15.

The ALJ determined Plaintiff had the residual functional capacity to perform sedentary work with the following limitations: allowed a cane for ambulation; occasionally use ramps and stairs; occasionally stoop, crouch, and twist; avoid kneeling and crawling; avoid unprotected heights and dangerous machinery; operation of foot controls reduced to frequent for left lower extremity; and operation of foot controls reduced to occasional for right lower extremity.  R. 15.  At step four, the ALJ determined Plaintiff could not perform any past relevant work.  R. 17.  At step five, the ALJ determined Plaintiff could perform jobs in the national economy including, document preparer, call out operator, and ticket checker.  R. 18.

## II.     Issues Presented

Plaintiff asserts two enumerations of error.  First, Plaintiff argues the ALJ's rejection of her testimony surrounding her pain and limitations is not supported by substantial evidence because the ALJ improperly relied on her non-compliance with weight loss recommendations.  Second, Plaintiff argues the ALJ erred by only addressing her SSI claim and not her DIB claim.

## III.    Standard of Review

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

IV.     **Whether the ALJ Erred in Rejecting Plaintiff's Testimony Regarding her Pain and Limitations**

Plaintiff argues the ALJ improperly considered her failure to lose weight when evaluating the intensity, persistence, and limiting effects of her pain and symptoms, and, therefore, the ALJ's rejection of her testimony regarding her pain and limitations is not supported by substantial evidence.  Doc. 17 at 6.  Plaintiff states the ALJ also disregarded evidence which contradicted his conclusion she was non-compliant.  Id.  Plaintiff argues this alleged error was harmful because the ALJ's rejection of Plaintiff's testimony about her pain and symptoms

caused the ALJ to formulate a less limited residual functional capacity, which, in turn, resulted in

the ALJ determining jobs exist in significant numbers in the national economy Plaintiff can

perform.  Id. at 21.

In her Response, Defendant generally argues the ALJ's finding regarding the intensity,

persistence, and limiting effects of Plaintiff's symptoms is supported by substantial evidence in

the record.  Doc. 20 at 4–11.  Defendant does not, however, argue the ALJ's consideration of

Plaintiff's weight loss was permissible or address the authority set forth in Plaintiff's brief.

In his decision, the ALJ relied heavily, if not exclusively, on Plaintiff's failure to comply

with weight loss recommendations when rejecting her testimony.  The ALJ discussed Plaintiff's

non-compliance due to her failure to lose weight multiple times throughout his opinion.  When

rejecting Plaintiff's statements concerning the intensity, persistence, and limiting effects of her

symptoms, the ALJ stated,

> As for the claimant's statements about the intensity, persistence, and limiting
> effects of her symptoms, they are inconsistent because the claimant was *not
> compliant* with recommended weight loss treatment to improve her right knee
> pain and limitations.
>
> . . . .
>
> The claimant had been encouraged several times on weight loss methods such as
> balanced diet with close caloric restriction and exercise regarding her knee
> problems.  However, follow-up visits revealed the claimant was *non-compliant*
> with these methods, as her BMI consistently remained 30.0 or higher.  During the
> 2017 visits with South Georgia Physicians Group, the claimant's BMI was 35.56.
> In fact, the claimant was informed on August 2017 that there were no other non-
> surgical treatment options besides the injections, which she did not benefit.
> Considering her young age, Dr. Randall Obrien suggested that she post-pone
> surgical intervention as long as possible, and Dr. Obrien already discussed the
> role that excess body weight contributed in both the cause and treatment of her
> condition, which her BMI was 37.24 at that time.
>
> Follow-up visit in April 2018 showed that the claimant's BMI increased
> indicating that the claimant continued to be *non-compliant* with recommended
> weight loss methods . . . .  [I]t was noted that the claimant was *non-compliant*

with post-operative instructions, which she was informed of the consequences if she continued.

. . . It was noted that the claimant's rapid weight gain was secondary to lack of exercise, and treatment recommended included diet and exercise.

In January 2019, the claimant complained of bilateral knee pain. However, her BMI increased to 42.4, which showed the claimant continued to be *non-compliant* with weight loss treatment . . . . However, the claimant's BMI was still above 40.0, which she received additional counseling about lifestyle education regarding diet, as she continued to be *non-compliant* regarding weight loss. The medical evidence showed the claimant's weight impairment directly affected her knees. However, the evidence also showed that the claimant had not made a significant difference in her weight to relieve her pain and limitations on her knees.

R. 17–18 (emphases added and internal citations omitted).

This reasoning is not in accordance with Eleventh Circuit case law. Under SSR 16-3p, failure to follow prescribed treatment may be considered as a factor in conducting symptom evaluations, but the Eleventh Circuit Court of Appeals has concluded "prescribed treatment" does not include a mere weight loss recommendation. In McCall v. Bowen, 846 F.2d 1317, 1318 (11th Cir. 1988), the Eleventh Circuit considered whether obesity alone could be considered by an ALJ as evidence of a refusal to follow a prescribed course of treatment. The claimant in McCall suffered from a range of back and joint problems.[1]  Id. at 1318–19. The claimant's doctors stated her conditions were aggravated by her weight and did not recommend surgery because of her weight. Id. at 1319. The ALJ discredited the claimant's allegations of pain based on the fact the pain would be significantly improved with weight loss. Id. The court found the ALJ erred because his "finding of no disability was colored by the implication that [the claimant's] obesity was remediable." Id. The court reasoned, "A physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment, nor does a

---

[1]     Notably, the claimant in McCall and Plaintiff suffer from similar conditions; both were diagnosed with degenerative joint disease.

claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment." Id.  While McCall dealt with an ALJ's reliance on the claimant's alleged failure to follow prescribed treatment in the context of an overall disability determination rather than symptom evaluation, its reasoning relating to the definition of "prescribed treatment" and failure to comply therewith applies to this case.

The ALJ in this case erred in two respects.  First, the ALJ erred in ostensibly concluding the doctors' weight loss recommendations constituted a "prescribed treatment."  Because he repeatedly discussed Plaintiff's non-compliance with weight loss recommendations, it is apparent the ALJ treated the weight loss recommendations in the record a "prescribed treatment."  However, the ALJ acknowledged himself in the text of his opinion Plaintiff's doctors only encouraged Plaintiff to lose weight.  R. 16.  Nothing in the medical records suggests Plaintiff's doctors imposed a steadfast requirement for her to lose weight to improve her knee and ankle problems; rather, the records only state weight loss was discussed with Plaintiff or recommended.  R. 393, 405, 519, 531, 566, 583, 613, 626, 632, 635, 639, 643, 668, 670, 671, 674, 692, 694.  A mere recommendation to lose weight as part of an overall treatment strategy for a patient is not sufficient to constitute "prescribed treatment."  McCall, 846 F.2d at 1319.

Second, the ALJ erred in concluding Plaintiff's lack of weight loss demonstrated a refusal to comply with treatment.  The ALJ principally relied on Plaintiff's body mass index ("BMI") either staying the same or increasing for his conclusion Plaintiff was non-compliant.  R. 17–18.  The ALJ plainly concluded weight loss was within Plaintiff's control and she failed to take necessary steps to reduce her weight. See, e.g., id. at 17 ("[T]he evidence also showed that the claimant had not made a significant difference in her weight to relieve her pain and limitations on her knees").  But Plaintiff's "obesity, of itself does not justify the conclusion that she has

refused treatment nor the consequent denial of disability benefits." McCall, 846 F.2d at 1319.

Nothing in the medical records suggests Plaintiff refused to try a specific treatment plan set forth

by a physician.[2]  Moreover, the ALJ pointed to nothing in his decision—other than general

recommendations that Plaintiff lose weight and a lack of weight loss—to conclude Plaintiff was

not compliant.  This is the same approach the ALJ took in McCall, which the Eleventh Circuit

rejected.[3]

The rationale expressed in McCall highlights the ALJ's error here.  The ALJ concluded

Plaintiff was non-compliant because providers recommended weight loss, but Plaintiff did not

lose weight.  But this conclusion does not take into account that other factors may have

contributed to Plaintiff's weight issues.  For example, a progress note by Nirmala Amaram states

Plaintiff's use of prednisone may have been a factor in her weight gain.  R. 670.  And, as

explained below, the record demonstrates Plaintiff would likely experience pain and cause stress

to her knees if she engaged in exercise, which was one of the primary components of the

recommended weight loss methods.  The ALJ's impermissible approach failed to account for

these other factors.

Furthermore, even if the recommendations for Plaintiff to lose weight did constitute a

"prescribed treatment," the ALJ would need to consider possible reasons Plaintiff may not have

complied with the treatment.  SSR 16-3p.  The ALJ completely failed to address whether there

was a good reason for Plaintiff's failure to follow the recommended weight loss methods.  And

there are indications in the record indicating Plaintiff may have not followed the recommended

---

[2]    To the extent the medical records state Plaintiff was non-compliant with post-operative instructions, the records indicate this non-compliance related to Plaintiff engaging in certain weightbearing activities rather than recommended weight loss.  R. 643, 645, 647, 648, 695.

[3]    Although Plaintiff relied on McCall in her opening brief, doc. 17 at 18–21, Defendant did not address the case in her Response, doc. 20.

weight loss methods (namely, exercise) for reasons other than willful refusal.  Dr. Randall

O'Brien noted, "[W]e discussed weight loss and I have advised her to start water aerobics as this

will be less painful for her and less stress on her knees."[4]  R. 639.  This progress note

demonstrates Plaintiff would likely have had difficulty exercising during this time due her knee

problems.  Thus, even if the recommended weight loss constituted a "prescribed treatment," the

Court cannot determine whether the ALJ applied the correct legal standards as to non-

compliance with a prescribed treatment, because the ALJ's decision is silent on this important

issue.

      In sum, the ALJ erred discrediting Plaintiff's testimony regarding pain and limitations

based on purported non-compliance with weight loss recommendations.  Even if the weight loss

recommendations constituted "prescribed treatment," the ALJ failed to adequately address non-

compliance with that treatment regimen.  I also find this error was material.  The ALJ reached

his determinations concerning Plaintiff's residual functional capacity based in large part on

Plaintiff's purported non-compliance with recommended weight loss methods, and this residual

functional capacity determination had a direct impact on the ALJ's conclusions regarding

available jobs in the national economy.  Therefore, remand is warranted.[5]

---

[4]      The record is silent on whether Plaintiff had access to water aerobics facilities.

[5]      The Court declines to address Plaintiff's argument the ALJ erred in failing to address whether weight loss would have restored Plaintiff's ability to work.  Doc. 17 at 17–21.  Although such an express finding is necessary under the Regulations when relying on non-compliance to make an overall disability determination, it is not apparent these Regulations apply solely in the context of a symptom evaluation. 20 C.F.R. §§ 404.1530, 416.930; SSR 18-3p; see SSR 16-3p (stating non-compliance with prescribed treatment can be considered as a factor when conducting symptom evaluation without discussing restoration of ability to work); Lane v. Colvin, No. 5:13-CV-437, 2015 WL 269142, at *4 (M.D. Ga. Jan. 21, 2015) (highlighting distinction between non-compliance when assessing overall disability and claimant's credibility).

**V.     Whether the ALJ Erred in not Addressing Plaintiff's DIB Claim**

Plaintiff argues she applied both for SSI and DIB, which were both denied initially by the agency.  Doc. 17 at 22.  However, Plaintiff only filed a reconsideration form for her SSI claim prior to obtaining counsel.  Id.  After obtaining counsel, Plaintiff contends she attempted to assert both claims in both her briefing and at the hearing, but her request was improperly denied by the ALJ.  Id. at 23–24.  Plaintiff states she again attempted to assert the DIB claim on appeal, but the agency denied her appeal without even mentioning the DIB claim.  Id. at 24.  Rather than arguing the ALJ's failure to address the DIB claim was proper, Defendant argues any error committed by the ALJ is harmless error.  Doc. 20 at 11–12.

Given that I have recommended remand due to the errors discussed above, the agency should either consider Plaintiff's DIB claim or more clearly explain why it will not consider the claim on remand.  In his decision, the ALJ only stated, "The representative objected that there was no Title II under consideration.  It was pointed out that Title II had not been appealed, and the representative stated she 'reserved the right to look into that.'  However, this is a Title XVI case only."  R. 11.  This comment does not sufficiently explain why the ALJ concluded the case was only a Title XVI case when Plaintiff originally applied both for SSI and DIB.  R. 230–42.  Thus, the ALJ has not provided sufficient explanation for the Court to determine whether the correct legal standards were applied in this case.  Wiggins, 679 F.2d at 1389; Cornelius, 936 F.2d at 1146.  The Appeals Council likewise did not offer any further explanation.  R. 1–7.

## CONCLUSION

For the reasons discussed above, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g) and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or any other filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 5th day of August, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA